ROBERT J. HOLCOMB, Employee, Plaintiff v. BUTLER MANUFACTURING COMPANY, Employer; LIBERTY MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. COA02-491

(Filed 3 June 2003)

**Workers' Compensation— injury at work—Commission's finding—evidence supports**

There was competent evidence to support the Industrial Commission's findings in a workers' compensation action that plaintiff did not injure his back at work. Plaintiff initially and repeatedly said that his back popped while rising from a chair while on vacation, he explained these statements by saying that he was afraid to jeopardize a corporate safety award, a co-worker

IN THE COURT OF APPEALS

and supervisor did not recall plaintiff indicating that he had injured his back at work, and plaintiff's doctors testified that plaintiff likely suffered from degenerative disc disease and that trauma would not have been necessary for his injury.

Appeal by plaintiff from opinion and award filed 18 January 2002 by the North Carolina Industrial Commission. Heard in the Court of Appeals 11 March 2003.

*Jones Marcari Russotto Walker & Spencer, P.C., by David W. Spencer, for plaintiff appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Patrick H. Flanagan and Dan H. Hartzog, for defendant appellees.*

ELMORE, Judge.

From an opinion and award of the North Carolina Industrial Commission denying his workers' compensation claim, plaintiff, Robert J. Holcomb, appeals. After a careful review of the record, we hold that the Commission's findings of fact are conclusive on appeal because competent evidence in the record supports those findings. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). We also find that the Commission's findings of fact support its conclusion of law. Accordingly, we affirm the full Commission's opinion and award denying plaintiff's claim.

Plaintiff began working for defendant Butler Manufacturing Company (Butler) as a temporary employee in May 1994 and became a permanent employee in June 1994. Plaintiff worked as a press operator; his duties included setting up the press, changing the die in the press, loading machinery, and operating the press.

Plaintiff contends that on 29 June 1995 he was assisting a coworker, Ralph Graham (Graham), in lifting and stacking several 100-pound "top cords" when he felt a "pop" in his back and "fell to one knee." Plaintiff testified that he told Graham "something popped in my back" and "I can't help you no more[,]" whereupon plaintiff went back to his press and continued working for the rest of his shift. Graham, however, testified at the Industrial Commission hearing that he did not recall plaintiff saying he had hurt his back. Plaintiff did not tell any other Butler employee about his back injury the rest of that day or the next, when he worked a full shift. Plaintiff thereafter did

not work from 1 July 1995 through 9 July 1995 because he was on vacation with his family at the beach.

Plaintiff returned to work from vacation on 10 July 1995 but left early because of back pain. Plaintiff testified he saw his supervisor, Duncan Stewart (Stewart), that day and "told him I had hurt my back. I didn't tell him how or why." Stewart testified that Butler required its employees to immediately report any work-related injury to their supervisor and to record the injury in a logbook, and that Plaintiff failed to follow these directives. Plaintiff also testified that he saw Butler's plant manager, Dana Wilson (Wilson), as he was leaving work on 10 July 1995, and that he told Wilson "I had hurt my back . . . I was cooking out and got up out of the chair, and something happened. . . . I don't know what happened to my back." At his deposition Wilson testified that he "specifically asked" plaintiff if his back injury occurred at work, and plaintiff responded "No, it did not. It occurred while [plaintiff] was on vacation. . . . He indicated his back popped. . . . When he was getting up from a chair." Plaintiff acknowledged giving Wilson this explanation for his injury, and plaintiff testified he did so because he was concerned that classifying the injury as work-related would jeopardize Butler's eligibility for a corporate safety award and could result in plaintiff losing his job. Wilson testified that he next spoke with plaintiff in April 1996, at which time plaintiff told Wilson he had actually injured his back at work but had not reported it for fear of losing his job.

On 11 July 1995, plaintiff went to his family physician, Dr. Bradford K. Faulkenberry, complaining of severe lower back pain radiating into his legs. At his deposition Dr. Faulkenberry testified that plaintiff presented with "a three-day [] history of low back pain[]" which plaintiff said began when he "was . . . cooking out, bent over, and felt a severe pain in his low back." Plaintiff, however, testified that he told Dr. Faulkenberry he hurt his back at work on 29 June 1995 while lifting the top cords. Dr. Faulkenberry examined plaintiff, initially diagnosed a lumbar spasm, and prescribed medication and physical therapy. Plaintiff's pain did not improve and he was seen at Scotland Memorial Hospital on 14 July 1995, where he again indicated that he injured his back getting out of a chair. Plaintiff subsequently underwent an MRI, which revealed multiple lumbar disc herniation and nerve impingement. When asked at his deposition whether it was atypical for a person to suffer herniated discs from getting out of a chair, Dr. Faulkenberry replied, "No. . . . I don't think he just got those that day. I think he'd had them for many years before that."

Plaintiff saw Dr. Malcolm Shupeck, a neurosurgeon, for a surgical consultation on 7 August 1995. Dr. Shupeck's notes indicate plaintiff was injured on 8 July 1995 when he "got out of [a] chair and felt a snap." Plaintiff, however, testified that he told Dr. Shupeck he hurt his back at work when he "was picking up something, and . . . felt something pop in my back." Plaintiff subsequently underwent a disk removal on 6 September 1995. When his pain did not resolve, plaintiff underwent additional surgery on 8 May 1996. At his deposition, Dr. Shupeck testified that he did not have a medical opinion as to the cause of plaintiff's injury, but that "most disc herniations are felt to be related to degenerative disease" and that it was not probable that lifting the top cords could have caused plaintiff's injury "unless there's already some disc abnormality."

After the second surgery failed to provide relief, plaintiff was seen at the University of North Carolina Pain Clinic by Dr. Michael Lee on 24 October 1996. Dr. Lee's notes indicate plaintiff reported suffering "a back injury in 6/95, after lifting more than 100 lbs. over his head at work." Plaintiff has not worked since 10 July 1995 due to his back pain.

On 30 April 1997, plaintiff filed a Form 18 notice of accident to employer, asserting that he suffered a work-related injury to his lower back on 29 June 1995 "caused by stacking beams and helping material handler pick up steel[.]" Defendants subsequently denied plaintiff's claim. On 3 April 1998, and again on 16 March 1999, plaintiff filed a Form 33 request that claim be assigned for hearing. On 24 June 1999, a hearing was held before Deputy Commissioner Theresa B. Stephenson, and the record was closed on 13 December 2000 after Dr. Faulkenberry, Dr. Shupeck, and Wilson were deposed. In her opinion and award filed 26 January 2001, Deputy Commissioner Stephenson concluded that plaintiff had sustained a work-related compensable injury and awarded temporary total disability benefits, medical expenses, and costs. The full Commission reviewed the case without receiving additional evidence on 27 September 2001. By its opinion and award filed 18 January 2002, the Commission made the following pertinent findings of fact:

> 2. On June 29, 1995, plaintiff was performing his duties on second shift and helped Ralph Graham, a materials handler, pick up a top cord. . . . Plaintiff and Mr. Graham were stacking these cords so another co-worker could lift them with a crane. . . . Plaintiff testified that, when he lifted the top cord overhead, he felt a pop

HOLCOMB v. BUTLER MFG. CO.

[158 N.C. App. 267 (2003)]

and sharp pain in his back and fell down to one knee. Plaintiff also testified . . . that he informed Mr. Graham he could not help him anymore. In contrast to this testimony, Mr. Graham testified that he did not believe that plaintiff went down on a knee, told him that he was injured, or failed to complete the job, but that, if plaintiff's testimony were true, then Mr. Graham simply did not remember such an incident. Mr. Graham did not recall any incident or injury to plaintiff. . . .

3. Plaintiff did not report his alleged work-related injury on June 29, 1995. Plaintiff returned to work the next day. Plaintiff testified that, after working four hours, he informed Mr. Duncan Stewart, a supervisor, he had hurt his back and had to go home. Mr. Stewart does not recall this conversation. . . .

. . .

5. When plaintiff returned to work on July 10, 1995, . . . [he] informed Mr. [Dana] Wilson that he hurt his back when he got up from a chair. Plaintiff testified that he did not inform Mr. Wilson that the injury occurred at work because the company was eligible for a corporate safety flag for "no time loss" injuries and plaintiff did not want to be the one who prevented the company from receiving this honor.

6. On July 11, 1995, plaintiff sought treatment from . . . Dr. Bradford Faulkenberry. Plaintiff reported a three-day history of severe low back pain with some radiation into his posterior thighs. Plaintiff did not indicate he injured his back at work but instead told Dr. Faulkenberry he felt a severe pain in his lower back when he bent over while cooking out. The three-day history of pain would be consistent with an injury on July 8, 1995, while plaintiff was on vacation.

. . .

8. On July 14, 1995, plaintiff received physical therapy at Scotland Memorial Hospital and indicated he had low back pain for five days. Plaintiff told them he had pain when he got out of a chair on July 8, 1995, which is, again, consistent with an injury occurring while plaintiff was on vacation.

. . .

10. Plaintiff saw Dr. Shupeck for the first time on August 7, 1995. Plaintiff reported low back pain, hip pain and right leg numbness,

and that the pain began when plaintiff got out of a chair. Dr. Shupeck excused plaintiff from working.

. . .

15. When plaintiff's pain did not improve [after two surgeries], Dr. Shupeck referred him to Dr. Lee at the Physical Medicine and Rehabilitation Clinic at UNC Hospital. The plaintiff saw Dr. Lee on October 24, 1996. Plaintiff reported to Dr. Lee that he had been injured on the job. This appears to be the first medical report to give a history relating the injury to work or indicating that the date of injury was when plaintiff was working.

. . .

18. Dana Wilson, the plant manager, testified that he saw plaintiff in July 1995, on plaintiff's first day back at work following his vacation, and noticed that he was walking "poorly" and asked plaintiff whether he was injured at work. Plaintiff reported that something in his back popped while he was on vacation while getting out of a chair. In April 1996, plaintiff called Mr. Wilson and informed him that he was injured at work while lifting some material. When asked by Mr. Wilson why he had not reported the injury before, plaintiff told Mr. Wilson that he was afraid to indicate that he was injured at work.

. . .

18. [sic] The greater weight of the evidence is that plaintiff did not injure his back at work on June 29, 1995. Plaintiff was on vacation on July 8, 1995, and the medical records and deposition testimony of Dr. Faulkenberry and Dr. Shupeck indicate that this was the date of plaintiff's symptoms. Plaintiff did not provide a history of injury at work to either Dr. Faulkenberry or Dr. Shupeck[.] . . . Mr. Graham was not able to confirm plaintiff's alleged injury. Plaintiff did not report to his employer that his injury was related to work until April 1996. Plaintiff did not indicate to a health care provider that his injury was caused at work until 15 months after the injury. Neither Dr. Faulkenberry nor Dr. Shupeck were able to relate plaintiff's back injury and complaints to the alleged work injury. For these reasons, the greater weight of the evidence is contrary to plaintiff's current assertion that he was injured at work.

Based on these findings of fact, the full Commission, with Commissioner Thomas J. Bolch dissenting, concluded that plaintiff

"has failed to establish that he suffered a compensable injury arising out of and in the course of his employment with [Butler] on 29 June 1995." From this determination, plaintiff appeals.

Plaintiff argues that the Commission erred "in finding that the greater weight of the evidence was that the plaintiff did not injure his back at work on June 29, 1995" and "in concluding that the plaintiff failed to establish that he suffered a compensable injury arising out of and in the course of his employment with the defendant on June 29, 1995[.]" We disagree.

It is well-settled that this Court, when reviewing an opinion and award of the Commission, is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). "The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Adams v. Avx Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (quoting *Anderson v. Lincoln Construction Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). The Commission's findings of fact are conclusive on appeal if they are supported by any competent evidence in the record, even though there is evidence that would support contrary findings. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.*

After reviewing the arguments set forth in plaintiff's brief in light of these principles, it is apparent plaintiff's arguments are without merit. The evidence before the Commission regarding when and how plaintiff injured his back was conflicting. Plaintiff essentially argues that because the Commission resolved this conflicting evidence in defendants' favor, the Commission did not properly consider the evidence in the light most favorable to plaintiff. In considering plaintiff's argument, we stress that "where the evidence before the Commission is such as to permit either one of two contrary findings, the determination of the Commission is conclusive on appeal and the mere fact that an appellate court disagrees with the findings of the Commission is not grounds for reversal." *Morrison v. Burlington Industries*, 301 N.C. 226, 232, 271 S.E.2d 364, 367 (1980).

The record in the case *sub judice* is replete with competent evidence tending to support the Commission's findings of fact, specifi-

cally that plaintiff did not injure his back at work on 29 June 1995. There is plenary evidence from the testimony and medical records of plaintiff's treating physicians that plaintiff consistently indicated he injured his back while on vacation around 8 July 1995 when he was getting up out of a chair. Both Dr. Faulkenberry and Dr. Shupeck testified that plaintiff likely suffered from degenerative disc disease, and that consequently trauma would not have been necessary to cause plaintiff's lumbar disc herniation. Graham and Stewart, plaintiff's co-worker and supervisor, each testified they could not recall plaintiff indicating he had injured his back at work on 29 June 1995. Wilson, Butler's plant manager, testified that plaintiff initially indicated he had not injured his back at work, but rather when he got up out of a chair while on vacation, and that plaintiff did not tell him otherwise until almost a year later. Plaintiff did not file a claim for worker's compensation benefits until April 1997, almost two years after the allegedly work-related injury. While plaintiff's testimony conflicts with much of this evidence or purports to explain it in a manner favorable to his claim, we again stress that our Supreme Court has limited this Court's review of the Commission's findings of fact to whether there was any competent evidence of record tending to support them. *Adams*, 349 N.C. at 681, 509 S.E.2d at 413 ("It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony.")

Because the Commission's findings of fact are supported by competent evidence of record, and those findings in turn support the Commission's conclusions of law, we affirm the decision of the full Commission.

Affirmed.

Judges HUNTER and BRYANT concur.