CALABRIA, Judge.
Pillowtex Corporation ("Pillowtex") and U.S. Fire Insurance Company (Crawford & Company (servicing agent)) (collectively, "defendants") and James Whitehead ("plaintiff") appeal from an opinion and award of the North Carolina Industrial Commission (the "Commission"), awarding plaintiff workers' compensation benefits for a work-related injury that occurred on 8 January 2001 and that continued until 19 August 2002. We affirm. Plaintiff worked for Pillowtex as a card tender on 8 January 2001. The Commission described this position as one that "required running a large machine and moving the cotton being produced across the floor in three to four-foot-high cans weighing approximately 75 pounds. To do this plaintiff was required to pull three or four cans at a time approximately 75 to 100 yards." While the floor was cleaned after each shift, the cotton dust from the machines producing cotton fibers built up on the floor during the shift, making it more difficult to pull the cans across the floor near the end of the shift. The remainder of the evidence is disputed. Specifically, it is disputed whether plaintiff suffered a compensable injury near the end of his shift on 8 January, whether he reported any such injury, and whether his wage-earning capacity was diminished after 19 August 2002. Further facts will be provided as these issues are addressed.
I. Standard of Review
Our review of a decision of the Commission is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). In undertaking this review, this Court "'does not have the right to weigh the evidence and decide the issue on the basis of its weight.'" Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (quoting Anderson v. Construction Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "The evidence tending to support plaintiff's claim isto be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." Id.
The Commission is the "sole judge of the weight and credibility of the evidence[.]" Deese, 352 N.C. at 116, 530 S.E.2d at 553. Moreover, the Commission does not have to explain its findings of fact by attempting to distinguish which evidence or witnesses it finds credible. [Requiring and reviewing such explanation] would be inconsistent with our legal system's tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another.
Id., 352 N.C. at 116-17, 530 S.E.2d at 553. The Commission need not "find facts as to all credible evidence. That requirement would [amount to] an unreasonable burden . . . . Instead the Commission must find those facts which are necessary to support its conclusions of law." Peagler v. Tyson Foods, Inc., 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000) (internal quotation marks omitted).
II. Evidence of Injury and Report
Defendants first assert that the Commission's findings of fact regarding plaintiff's injury and the findings of fact regarding plaintiff's reporting of the injury were not supported by competent evidence in the record. The Commission made, in pertinent part, the following findings of fact regarding plaintiff's injury:
3. On January 8, 2001, plaintiff was pulling several large cans of cotton across the floor when he felt a pop in his lower back and pain down his right leg. Plaintiff testified thathe had prior problems with his hip, but that he had never experienced back pain or pain into his leg like he did after this incident.
4. . . . Plaintiff's injury on January 8, 2001 occurred near the end of his shift.
In support of these findings of fact, plaintiff testified he "was pulling cans across the floor [at the end of his shift], and [he] felt something pop in [his] lower back and then - right there in [his] joint bone - felt pain - shot all the way down [his] leg, and it stopped [him] in a standstill because [he] couldn't put no pressure on [his] leg." Defendants contend, without specific reason, that this testimony "was not competent evidence" and assert, without example, that there were contradictions from other lay witnesses and plaintiff's treating physicians. In essence, defendants ask this Court to look at the record, find conflicting evidence, and accord it more weight than plaintiff's testimony for the purpose of contradicting the Commission's findings. To state the proposition is to show its fallacy. As we have long held, the Commission is the sole judge of the weight and credibility of the evidence. Deese, 352 N.C. at 116, 530 S.E.2d at 553. We find no reason to conclude plaintiff's testimony was not competent and uphold these findings of fact.
Defendants assert some findings of fact, specifically findings five, six, and twenty-two concerning how plaintiff reported his injury, are not supported by competent evidence. The Commission made, in pertinent part, the following findings of fact regarding plaintiff's report of his injury:
5. Plaintiff testified that he went to the smoking area and informed his supervisor,James Barnes, of his injury. Mr. Barnes did not recall the conversation in the smoking area. Mr. Barnes did say plaintiff reported an injury, but that plaintiff did not specify that it was an on-the-job injury, although plaintiff reported the injury to Mr. Barnes while at work. Plaintiff also informed human resources manager Betty Keel of his difficulty walking and an inability to do his job and requested other work. There is no evidence that Mr. Barnes or Ms. Keel ever made any inquiry as to how the injury occurred.
6. Plaintiff immediately informed Kenny Arrington, a co-worker, of the incident in question. Mr. Arrington testified that plaintiff told him he was having low back and leg pain in the break room at approximately 5:00 a.m.
. . .
22. Plaintiff filed the Form 18 Report of Injury on July 27, 2001. The Full Commission finds defendants have not shown any prejudice by plaintiff's alleged delay in reporting the injury. The Full Commission finds plaintiff's testimony credible that he notified Mr. Barnes, his supervisor, immediately after the injury occurred.
Regarding finding of fact six, defendants assert Kenny Arrington's ("Arrington") testimony was not competent because he "lacked the mental faculties needed to offer competent evidence" and could not state his name or "respond to any question which required more than memorizing the testimony recently heard." On the contrary, Arrington did give his full name when prompted and a cursory review of the transcript reveals he answered the questions appropriately. Nothing in the transcript indicates coaching or memorization, and defendants never argued to the Commission that Arrington's testimony was incompetent. The deputy commissioner directly observed Arrington's testimony and demeanor and found itsufficiently credible and competent, as did the Commission. Defendants' reason to disturb finding of fact six is unpersuasive.
Regarding finding of fact five, plaintiff testified that, after the injury to his back, he "got [him]self together, and [he] went . . . to the smoking area [where he] saw James Barnes. [He] told James that [he] was feeling like [he] done pulled something a loose, and . . . [James] told [him] that [he] need[ed] to go to the doctor for it." Later, plaintiff reiterated he told Barnes that it felt like something had "pulled loose" and "pain was shooting on down [his] legs." Plaintiff also testified he told his department manager he needed lighter work because he had hurt himself. Ms. Keel, herself, testified plaintiff brought her a doctor's note "stating he was unable to work and that . . . he was not able to push and walk the twelve-hour shifts." This testimony constitutes competent evidence in the record supporting finding of fact five.
Defendants have failed to specifically address finding of fact twenty-two and, to the extent previous arguments are directed towards portions of that finding of fact, they have already been rejected. This assignment of error is overruled.
Defendants also assert there is no competent evidence plaintiff reported his accident to his treating physician. Defendants first argue the Commission failed to consider medical records indicating plaintiff had pre-existing and long-standing hip problems; however, in finding of fact three, the Commission noted plaintiff's prior problems with his hip but differentiated those problems from plaintiff's injury resulting from the accident. Defendants also argue "the records show that [plaintiff] only reported hip pain to Dr. Martin [one of plaintiff's treating physicians] and therefore no treatment was required for the back pain." However, Dr. Martin testified in his deposition that plaintiff "was referred . . . for evaluation of right low back and right hip pain." He further stated that plaintiff's "complaints were primarily in the low back area." Dr. Martin's medical records note that plaintiff's pain "began as sacroiliac and low back pain . . . ."
Defendants next argue Dr. Martin testified plaintiff never reported an injury by accident or a specific traumatic incident as shown by the lack of such information in Dr. Martin's records. Defendants have cited no authority for the proposition that a plaintiff must report an injury to a treating physician in the language of the statute, nor can we find any. Whether the injury was due to an accident or specific traumatic incident is either an issue of medical causation, which may be addressed by the doctor in response to hypothetical questions, or it is a legal issue to be resolved by the Commission, and need not be reported to the doctor in so many words. This argument has no merit.
Defendants next argue Dr. Martinez lacked a basis to testify to a reasonable degree of medical certainty that plaintiff's problems resulted from a specific traumatic incident because Dr. Martinez testified that he did not know how plaintiff's alleged injury occurred. Dr. Martinez specifically testified, with no objection by defendants, to a reasonable degree of medicalcertainty that his treatment of plaintiff was related to the on-the-job accident. Moreover, Dr. Martinez' notes indicate plaintiff told him he had an accident, and Dr. Martinez deposed that he knew plaintiff had an accident resulting in an injury at work. Further, Dr. Martinez knew plaintiff's job duties "entailed pushing and pulling over seventy-five pounds" and "involved walking and lifting about seventy-five pounds repeatedly and bending." While Dr. Martinez candidly admitted that he did not "remember exactly what [plaintiff] did" and his notes do not provide details concerning the specifics of plaintiff's accident, this is understandable given Dr. Martinez' testimony that he "did not particularly think [what happened] was . . . relevant [and it was] a long history and for [Dr. Martinez] it was that he had an injury." This testimony sufficiently establishes the basis for Dr. Martinez' opinion that plaintiff's problems resulted from a specific traumatic incident, and defendants' arguments are without merit.
We now turn to plaintiff's arguments on appeal. Plaintiff asserts the Commission erred by (1) using maximum medical improvement as a factor to determine cessation of disability, (2) failing to apply a presumption of continuing disability beyond that period in which the Commission found him to be disabled, and (3) concluding plaintiff's disability ended on 19 August 2002.
III. Maximum Medical Improvement
Plaintiff first contends the Commission erred in "utiliz[ing] maximum medical improvement ["MMI"] as an arbitrary factor in determining [plaintiff's] wage earning capacity." Plaintiffcorrectly notes this Court has previously stated that "the concept of MMI does not have any direct bearing upon an employee's right to continue to receive temporary disability benefits once the employee has established a loss of wage-earning capacity . . . ." Knight v. Wal-Mart Stores, Inc., 149 N.C. App. 1, 14, 562 S.E.2d 434, 443 (2002). However, plaintiff incorrectly asserts the Commission relied on using MMI in determining when to terminate plaintiff's benefits.
The Commission concluded as a matter of law that plaintiff was entitled to temporary total disability for the period between 8 January 2001 through 19 August 2002. In support of this conclusion, the Commission found plaintiff reached MMI on 19 August 2002, and in light of plaintiff's permanent restrictions, could have worked continuously under those restrictions since his discharge. The Commission further found plaintiff failed to show a continued diminished capacity to earn wages. While 19 August 2002 was the date plaintiff reached MMI, Dr. Martinez' testimony fully supports that date was also the date plaintiff could have returned to continuous work within the assigned restrictions. Accordingly, plaintiff's arguments regarding the Commission's use of the 19 August 2002 date are without merit.
IV. Continuing Presumption of Disability
Plaintiff next asserts he was entitled to a presumption of continued disability until he returned to suitable employment because the Commission found he was temporarily totally disabled between 8 January 2001 and 19 August 2002. To obtain workers'compensation benefits, a claimant bears the burden of proving both the existence and the extent of disability. Saums v. Raleigh Community Hospital, 346 N.C. 760, 763, 487 S.E.2d 746, 749 (1997). In the absence of a Form 21 or other admission of liability for compensation, the employee bears the burden of proving he is incapable of earning the wages he earned prior to the injury in either the same or other employment. Demery v. Converse, Inc., 138 N.C. App. 243, 249-50, 530 S.E.2d 871, 876 (2000). In this case, there was no admission of liability, and the Commission found plaintiff had carried his burden of proving a diminished wage-earning capacity for the period between 8 January 2001 and 19 August 2002. That finding, however, does not entitle plaintiff to a continuing presumption of disability. Indeed, it stands to reason that the Commission found plaintiff's compensation benefits were properly terminated as of 19 August 2002 precisely because his wage-earning capacity was no longer diminished. Plaintiff's argument to the contrary is without merit.
V. Termination of Benefits
Finally, plaintiff asserts the Commission erred in terminating his benefits as of 19 August 2002 because he met his burden of proving continued disability. Plaintiff's burden of proving disability can be met in one of four ways:
(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidencethat he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted). Plaintiff cannot meet the first prong because he failed to present medical testimony of an incapability to work. Indeed, Dr. Martinez' testimony was that plaintiff was capable of returning to work despite his physical restrictions and probability of continued pain. Plaintiff cannot meet the second prong because he failed to show a reasonable but unsuccessful effort to obtain employment. Plaintiff cannot meet the third prong because he failed to present evidence that his restrictions, coupled with a ninth grade education and limited literacy skills, make seeking other employment futile. Finally, plaintiff cannot meet the fourth prong because he is not currently employed.
The opinion and award of the Commission is affirmed.
Affirmed.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).