DAHLIA ATKINS, Employee, Plaintiff
v.
BLACK & DECKER, Employer SPECIALITY RISK SERVICES, Carrier, Defendants.
No. COA08-912.
Court of Appeals of North Carolina.
Filed March 17, 2009.
This case not for publication
Brumbaugh, Mu & King, PA, by Angela D. Vandivier-Stanley, for plaintiff-appellant.
Teague, Campbell, Dennis & Gorham, L.L.P., by Brad G. Inman and Jan N. Pittman, for defendants-appellees.
WYNN, Judge.
We review decisions of the North Carolina Industrial Commission to determine "whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law."[1] Here, Plaintiff-employee, Dahlia Atkins, argues that the Commission erred by determining that she did not develop an occupational disease within the course and scope of her employment. Because competent evidence supports the Commission's findings of fact, which in turn support the Commission's conclusions of law, we affirm.
Ms. Atkins began working for Defendant-employer Black and Decker Corporation in 1994 as an assembly-line worker. This position required her to use an air screwdriver to assemble parts. In 1997, Ms. Atkins transferred to the position of backup utility operator, which required her to use vibrating tools.
In 2002, Ms. Atkins "began to experience pain and swelling in both of her hands"; she reported her condition to two individuals at the on-site nurse's station. In June 2002, she consulted Dr. Sampson, her primary care physician, and underwent a series of "nerve conduction studies." Beginning in 2003, Ms. Atkins sought treatment for her hand condition from a number of physicians including: Dr. Louis Clark, an orthopedic surgeon; Drs. Lucas Van Tran and David Kishbaugh, who performed nerve conduction studies on Ms. Atkins; Dr. Paul O. Shricker; and Dr. Terry M. Messer, who performed "bilateral carpal tunnel releases" on Ms. Atkins. During this period, Ms. Atkins also received mental health treatment from Dr. Antonio Cusi, a psychiatrist, and Dr. Anthony Mangiardi, a psychologist.
Ms. Atkins filed a workers' compensation claim on 20 May 2003 and later requested a hearing in September 2003, after Black and Decker denied her claim. Following a hearing, Deputy Commissioner Robert Wayne Rideout, Jr. filed an Opinion and Award concluding that Ms. Atkins developed an occupational disease as a result of her employment with Black and Decker. Black and Decker appealed to the full Commission, which reversed Deputy Commissioner Rideout's decision and held that Ms. Atkins failed to prove that she suffers from a compensable occupational disease . Ms. Atkins now asks this Court to reverse the Commission's decision.
Our Workers' Compensation Act under N.C. Gen. Stat. § 97-53(13) (2007) defines the term "occupational disease" as a disease "which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." Further, for an occupational disease to be compensable:
(1) the disease must be characteristic of a trade or occupation, (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment, and (3) there must be proof of causation, i.e., proof of a causal connection between the disease and the employment.
Hansel v. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981) (citing Booker v. Duke Medical Center, 297 N.C. 458, 468, 475, 256 S.E.2d 189, 196, 200 (1979)).
Here, the Commission made extensive findings regarding Ms. Atkins' "occupational disease" claim:
12. Dr. Lucas Van Tran performed the August 25, 2003 nerve conduction study and indicated that he found "no evidence of any neuropathies in the left hand to include the common carpal tunnel syndrome or less encountered radial or ulnar neuropathies" and "only subtle abnormal findings for the right median digital neuropathy at the thumb, mostly from the effect of adjacent synovial cyst formation." Dr. Van Tran further opined that, from a neurological standpoint, the plaintiff's condition would not warrant work restriction and the "patient' s disability, if present, has to be based on other factors."
. . .
14. . . . Dr. Clark concluded on September 30, 2003 that he had no solution for plaintiff from a "hand surgical standpoint." Dr. Clark did not believe plaintiff had carpal tunnel syndrome in either upper extremity and he was unable to formulate any diagnosis to explain her complaints.
15. Plaintiff treated with Dr. Paul O. Shricker on three occasions in July through August of 2003 for evaluation and treatment of bilateral hand pain, soreness and weakness. On each occasion plaintiff exhibited extreme inconsistencies during physical therapy. Due to the lack of substantial findings Dr. Shricker did not recommend any surgical intervention. He noted that be [sic] could find nothing wrong with plaintiff other than possible ganglion cysts to explain her reported severe problems.
. . .
24. Based on the four most recent nerve conduction studies which were all interpreted as normal and the opinions proffered by plaintiff's treating physicians, the Full Commission finds that plaintiff has not proven by the greater weight of the evidence that she suffers from bilateral carpal tunnel syndrome. Dr. Clark testified that he had no diagnosis for her condition upon his release of plaintiff on September 30, 2003. Dr. Shricker's notes reveal his inability to account for plaintiff's complaints and his final note of August 7, 2003 indicates that he was not of the opinion that plaintiff suffered from bilateral carpal tunnel syndrome.
25. Although he performed bilateral carpal tunnel releases on plaintiff, Dr. Messer, testified that he only performed the procedures since nothing else had relieved plaintiff's symptoms. Dr. Messer admitted that the procedures provided little to no relief and that "it's almost certain there's something else going on other than or in addition to" bilateral carpal tunnel syndrome.
. . .
27. Dr. Messer was unable to decide whether it was more likely than not that plaintiff suffered from carpal tunnel syndrome or thoracic outlet syndrome[.]
28. Another of plaintiff's treating physicians, Dr. Carolyn Sampson, was of the opinion that plaintiff's symptoms were not relieved by Dr. Messer's surgery, and that in her medical opinion, she would have expected the carpal tunnel release procedures to provide relief to plaintiff if she suffered from carpal tunnel syndrome. Dr. Sampson also testified that she would ultimately rely on the opinions of orthopedic surgeons, Dr. Clark and Dr. Shricker, to diagnose plaintiff's condition and determine its cause.
29. Based upon the greater weight of the evidence, plaintiff has failed to prove that she suffers from bilateral carpal tunnel syndrome and she has offered no other medical evidence to account for her alleged physical complaints.
In sum, the Commission determined that, by the greater weight of the medical evidence, Ms. Atkins failed to establish that she suffers from carpal tunnel syndrome or any other compensable occupational disease.
The Commission's findings of fact may be set aside on appeal only "when there is a complete lack of competent evidence to support them." Rhodes v. Price Bros. Inc., 175 N.C. App. 219, 221, 622 S.E.2d 710, 712 (2005) (internal quotation marks and citation omitted). After careful review of the record, we find that the Commission's findings are supported by the expert testimonies ofDr. Clark and Dr. Messer, as well as the clinic notes of Dr. Van Tran and Dr. Shricker. While Ms. Atkins may disagree with the Commission's determination and weight given to the experts' testimonies, where the Commission's findings of fact are supported by competent evidence, they are conclusive on appeal. Anderson v. Construction Co., 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965). Further, upon upholding the Commission's determination that Ms. Atkins did not suffer from an "occupational disease" or an injury by accident, we need not address Ms. Atkins' remaining assignments of error, predicated on the existence of a compensable occupational disease or injury by accident . Thus, we affirm the Opinion and Award of the Commission.
Affirmed.
Judges ROBERT C. HUNTER and ERVIN concur.
Report per Rule 30(e).
NOTES
[1] Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000).